UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MARIO ALBERT VALADEZ,** | § | |
| **TDCJ No. 1706556,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| **V.** | § | **CIVIL NO. SA-15-CA-274-RP** |
| | § | |
| **WILLIAM STEPHENS, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Mario Albert Valadez filed this federal habeas corpus action pursuant to 28 U.S.C. § 2254 challenging his March, 2001 Comal County conviction in cause no. CR2010-417 for burglary of a habitation and his life sentence as a habitual offender. For the reasons set forth below, Petitioner is entitled to neither federal habeas corpus relief nor a certificate of appealability.

## I. Background

A.   Indictment & Trial

On October 13, 2010, a Comal County grand jury indicted Petitioner on two counts of burglary arising from the same incident on June 11, 2010.[1] In eight enhancement paragraphs, the same indictment charged Petitioner with having previously been convicted of burglary of a habitation seven times and possession of a deadly weapon once.

---

[1] A copy of Petitioner's indictment in cause no. CR2010-417 appears among the state court records from Petitioner's state trial court proceedings at ECF no. 18-1, at pp. 3-5.

The guilt-innocence phase of Petitioner's trial commenced on March 22, 2011.  The Texas Third Court of Appeals' opinion on direct appeal accurately recounts the events which transpired during the guilt-innocence phase of Petitioner's trial:

> The jury heard evidence that on June 11, 2010, the home of Tony and Leticia Valadez was burglarized.  Their adult son, Tony Jr., was alone in the house when the burglary allegedly occurred, and he was the State's primary witness during trial.  Tony Jr. testified that he was asleep in the house that morning when he heard the doorbell ring. Tony Jr. remained in bed.  However, "about three to five minutes" later, when he got up to use the bathroom, he heard someone in his parents' bedroom, walked slowly to their room, and looked in the doorway.  Inside the bedroom, Tony Jr. saw Valadez, his uncle and Tony's brother, looking through the closet.  Tony Jr. testified that Valadez "had a ring and a watch and other stuff in his hand."  According to Tony Jr., Valadez saw him, attempted to explain to Tony Jr. that he was a drug addict and needed "help," and asked him if he was going to tell his parents what he had seen.  Tony Jr. told Valadez that if he "put everything back," he would not tell his parents.  Valadez then proceeded to "put some stuff back," continued asking Tony Jr. not to say "anything ... to anyone," and eventually left the house.
>
> Tony Jr. further recounted that while he was out eating dinner with his friends that night, he received a phone call from his father, who inquired if any of his friends had been inside the house. Tony Jr. denied that anyone had been inside.  When Tony Jr. returned to the house later that night, police officers were there.  When Tony Jr. asked his father what had happened, his father told him that his wedding band and his watch were missing.  After the police left, Tony Jr. told his father that Valadez had been inside the house.  His father then called the police, officers returned to the house, and they took a statement from Tony Jr. Tony Jr. also testified that he did not let his uncle into the house that day, that he did not give his uncle consent to come into the house, and that he did not give him permission to take the watch or the wedding band.
>
> On cross-examination, Tony Jr. acknowledged that he did not know how Valadez had entered the house and that he had observed no signs of forced entry.  The record reflects that the house has three exterior doors—the front door, a side door into the kitchen, and a back door entering into the master bedroom.  Tony Jr. acknowledged that his parents usually lock the three exterior doors into the house when they leave, but he did not know whether the doors were locked that day.  Additionally, Tony Jr. admitted that when he had been interviewed by police, he had told them that the incident had occurred at approximately 2:00 p.m., and that the trial was the first time he had claimed the incident had occurred in the morning.

Tony Sr. testified that on the day of the alleged burglary, he had left his house at approximately 7:45 a.m. and returned at approximately 3:00 p.m. or 4:00 p.m. that afternoon. When he returned, he noticed that the back door to the master bedroom, which he testified had not been used in seven to eight years, was open and that a small John Deere tractor inside the bedroom that had always been "backed up to that door" had been "pushed forward ... three feet from the door." Tony shut the door, "went on with [his] business," and left the house. When Tony returned to the house later that afternoon, he noticed that his wedding band and his watch, both of which he usually kept on his nightstand, were missing. Tony also observed that various pieces of jewelry belonging to his wife were on his nightstand instead of hers, which he found to be "out of the ordinary." Tony asked his wife why her jewelry was on his nightstand, and she did not know. At that point, Tony called the police. When the police arrived, Tony also noticed a "fresh footprint" near the back door and pointed it out to the officers. The officers took photographs of the bedroom, the door, and the footprint, and copies of the photographs were admitted into evidence. Tony testified that he did not allow his brother inside his house that day, that he did not give him consent to enter the house, and that he did not give him permission to take his belongings.

Tony's wife, Leticia, testified that after her husband had told her that his watch and wedding band were missing, she began to look around their bedroom and noticed that some items were out of place and that her dresser drawers and jewelry boxes had been opened and "seemed like they had been gone through." Leticia then recounted how she and her husband had reported the incident to the police and had obtained information from their son about who had been inside the house. Leticia further testified that the following morning, she had gone to a pawn shop to look for the missing items. There, Leticia learned that the items had in fact been pawned at the store's other location. Leticia and Tony went to that location and recovered their property. Leticia also testified that she did not allow Valadez to come into her house on the day in question, that she did not give him consent to come into her home that day, and that she did not give him permission to take her husband's watch or wedding band.

One of the witnesses for the defense was Detective Edward Wahrmund of the New Braunfels Police Department, who had investigated the case. Defense counsel first attempted to elicit testimony from Wahrmund regarding statements allegedly made by Valadez during his interview with police. In these statements, which we explain more fully below, Valadez admits to participating in a drug transaction with Tony Jr. and claims that the stolen items were given to him by Tony Jr. in exchange for marihuana. The State objected to this testimony as inadmissible hearsay, while the defense argued that the testimony was admissible as a statement against interest. Following a hearing outside the presence of the jury, the district court sustained the State's objection.

When the jury returned, defense counsel proceeded to question Wahrmund on other matters related to the investigation.  Wahrmund testified that footprints were found leading into but not out of the house through the master bedroom.  From this evidence, Wahrmund surmised that the burglar got out of the house "probably through another entrance or exit."  Wahrmund also testified that during the investigation, he "did not note any signs of forced entry" into the house.

Officer Michael Smith of the New Braunfels Police Department also investigated the burglary and testified for the defense. Smith testified that he had concluded during the investigation that the person who had committed the burglary must have been someone who was familiar with the house.  He came to this conclusion because "whoever came in was very meticulous as to where they looked.  They pulled out items, set them aside, and did not take all of the valuables they saw; only specific items."  Smith also testified that there were no signs of forced entry into the house.

During the charge conference, the defense requested a jury instruction on the lesser-included offense of theft, which the district court denied.  Following its deliberations, the jury found Valadez guilty as charged and subsequently assessed punishment at life imprisonment.  The district court sentenced Valadez in accordance with the jury's verdict.

*Valadez v. State*, 03-11-00224-CR, 2011 WL 5138641, *1-*3  (Tex. App. – Austin, 2011, *pet dism'd*) (Footnotes omitted).

At the punishment phase of Petitioner's trial on March 23, 2011, Petitioner pleaded true to all eight of the enhancement paragraphs against him.[2]  A former New Braunfels police officer testified (1) he questioned Petitioner in January 1996 in connection with a burglary of a habitation, (2) Petitioner cooperated with his investigation of that offense, (3) Petitioner confessed to an additional seventeen other burglaries - thirteen in Comal County and four in Guadalupe County, and (4) Petitioner was convicted and received a forty-year term of incarceration.[3]  A New Braunfels police detective testified Petitioner signed a form in 1996 admitting his membership in the Mexican

---

[2] Statement of Facts from Petitioner's Trial (henceforth "S.F. Trial"), Volume 4 of 5, proceedings March 23, 2011 (ECF no. 18-11), at pp. 4-11.

[3] S.F. Trial, Volume 4 of 5 (ECF no. 18-11), testimony of Mike Rust, at pp. 18-23.

Mafia prison gang and a copy of the Mexican Mafia constitution was found in Petitioner's cell during a search.[4]   Petitioner's sister-in-law Leticia testified she had encouraged her husband to develop a relationship with Petitioner and felt "violated" by Petitioner's burglary of their home.[5]   The defense called Petitioner's spouse, who testified Petitioner was a good person who was kind , very patient, not violent, and had always treated her disabled twelve-year-old son well.[6]   The defense also called Petitioner's cousin, who testified (1) Petitioner had not been around much since he was a kid, (2) Petitioner admitted that he had stolen dope and sold drugs, and (3) despite Petitioner admitting that he burglarized his brother Tony's house, Petitioner asked his cousin to contact Tony and convince Tony to drop the charges against Petitioner.[7]   The jury returned its punishment phase verdict , imposing a life sentence.[8]

B.   <u>Direct Appeal</u>

Petitioner appealed his conviction and sentence.  The Texas Third Court of Appeals affirmed in an unpublished opinion.  *Valadez v. State*, 03-11-00224-CR, 2011 WL 5138641 (Tex. App. - Austin Oct. 26, 2011, *pet. dism'd*).[9]   The Texas Court of Criminal Appeals dismissed as untimely

---

[4] S.F. Trial, Volume 4 of 5 (ECF no. 18-11), testimony of John Sullivan, at pp. 24-30.

[5] S.F. Trial, Volume 4 of 5 (ECF no, 18-11), testimony of Leticia Valadez, at pp. 30-36.

[6] S.F. Trial, Volume 4 of 5 (ECF no. 18-11), testimony of Patty Valadez, at pp. 36-47.

[7] S.F. Trial, Volume 4 of 5, (ECF no,. 18-11), testimony of David Valadez, at pp. 47-55.

[8] S.F. Trial, Volume 4 of 5 (ECF no. 18-11), at pp. 75-76.

[9] As points of error on direct appeal, Petitioner argued (1) the state trial court erred in denying Petitioner's offer of his own hearsay statements through Detective Wahrmund as a statement against penal interest and (2) the trial court erred in denying Petitioner's request for a jury instruction on the lesser-included offense of theft.

Petitioner's initial, pro se petition for discretionary review on February 1, 2012.[10]   Thereafter, Petitioner sought and obtained state habeas corpus relief in the form of an order from the Texas Court of Criminal Appeals granting Petitioner permission to file an out-of-time petition for discretionary review.  *Ex parte Valadez*, AP-76,989, 2013 WL 1182729 (Tex. Crim. App. Mar. 20, 2013).  With the assistance of counsel, Petitioner then filed a second petition for discretionary review which the Texas Court of Criminal Appeals refused on June 12, 2013 (PD-598-13).[11]

C.      Second State Habeas Corpus Proceeding

        Petitioner filed his second application for state habeas corpus relief with the assistance of counsel on August 18, 2014.[12]   The Texas Court of Criminal Appeals ordered the state trial court to make factual findings in connection with Petitioner's second state habeas corpus application.  *Ex*

---

[10]  Petitioner's initial, pro se petition for discretionary review was filed January 9, 2012 (PD–46-12) and appears among the state court records filed by respondent as ECF no. 18-15. Petitioner's pro se initial petition for discretionary review raised the same two grounds for relief in his second PDR as his state appellate counsel had raised in Petitioner's brief on direct appeal.

[11]  Attorneys David A. Schulman and John G. Jasuta filed Petitioner's second petition for discretionary review on May 15, 2013 (ECF no. 18-17), raising therein a single claim, i.e., the argument that the trial court erred in excluding Petitioner's self-serving statements to Detective Wahrmund as hearsay which did not fall within the exception for statements against penal interest.

[12]  As grounds for relief in his second state habeas corpus application, Petitioner argued (1) his trial counsel rendered ineffective assistance by failing to adequately research applicable state law regarding the admissibility of Detective Wahrmund's testimony concerning Petitioner's hearsay statements, which caused said counsel to furnish Petitioner with bad legal advice which, in turn caused Petitioner to reject a plea offer of seven years and caused Petitioner to choose not to testify at trial and (2) his trial counsel rendered ineffective assistance by failing to impeach prosecution witness Tony Valadez, Jr. through said witness' prior inconsistent statements to police and Petitioner's testimony concerning the time of day when Tony Jr. claimed the burglary took place. The full text of Petitioner's second state habeas corpus application and the memorandum of law filed in support by attorneys John G. Jasuta and David A. Schulman, appears at among the transcript of pleadings, motions, transcripts, and other documents filed in Petitioner's second state habeas corpus proceeding (ECF no. 19-2), at pp.6-49.

*parte Valadez*, WR 78,418-02, 2014 WL 5421567 (Tex. Crim. App. Oct. 22, 2014).  On August 18, 2014, the state trial court held an evidentiary hearing on Petitioner's second state habeas corpus application.  During that hearing, the state habeas trial court heard testimony from (1) Petitioner that (a) he advised his trial counsel he wished to testify at trial, (b) his trial counsel advised him that his prior convictions would come in if Petitioner testified and stated she would subpoena Detective Wahrmund to testify about Petitioner's statements to the detective. (c) when the trial judge excluded Detective Wahrmund's testimony about Petitioner's hearsay statements, Petitioner's trial counsel said she would get the case reversed on appeal, and (d) had he known Detective Wahrmund's testimony would be excluded, he would have testified at trial[13]; (2) Petitioner's former state trial counsel that (a) she never refused to allow Petitioner to testify at trial, (b) Petitioner insisted she attempt to get in Detective Wahrmund's hearsay testimony and she did so, (c) Petitioner never asked or told her he wanted to testify at trial, (d) she did not believe using Detective Wahrmund's hearsay testimony was a good strategy because it involved an admission that Petitioner was engaged in drug dealing, (e) she believed Detective Wahrmund's hearsay testimony fell within the plain language of the hearsay exception for statements against penal interest, (f) the only plea offer extended to Petitioner was for fifty years, (g) she never told Petitioner his conviction would be reversed on appeal, (h) she advised Petitioner against testifying because his prior convictions could be used to impeach him, (i) she was concerned the jury would take offense at the defense attempting to throw Petitioner's nephew under the bus, (j) she did not believe Petitioner would have been a credible witness at trial - Petitioner's testimony would have been the nail in his coffin, (k) at trial, she raised

---

[13] Statement of Facts from Petitioner's state habeas corpus hearing (henceforth "S.F. State Habeas Hearing"), testimony of Mario Albert Valadez, at pp. 6-29 [ECF no. 19-2, at pp. 56-79].

inconsistencies within the testimony of Tony, Jr. and pointed out Tony, Jr. had given police two different statements, and (l) Petitioner admitted he pawned the items taken from the Valadez residence[14]; and (3) the lead prosecutor at Petitioner's trial that (a) the only plea offer he extended to Petitioner was for fifty years, (b) Petitioner's story, as told to detective Wahrmund was not a true defense to the burglary charge because Tony, Jr. did not have authority to consent to Petitioner's entry into the home, (c) it would have been easy to destroy Petitioner on cross-examination based upon his prior convictions and gang membership, (d) Detective Wahrmund saw recent track marks on Petitioner's arms, (e) recordings of Petitioner's telephone conversations while in jail included admissions by Petitioner that he stole the watch and ring and entered his brother's home without consent, (f) he was prepared to impeach Petitioner's hearsay statements with Petitioner's prior convictions if the hearsay had been admitted into evidence, and (g) in view of the ample impeachment evidence readily available, he did not believe Petitioner would have gained anything by testifying.[15]

On February 23, 2015, the state trial court issued an order containing its findings of fact and conclusions of law in which that court (1) found attorneys Brown and McCrary had testified in a credible manner while Petitioner had not, (2) found attorney Brown had discussed Petitioner testifying at trial with her client and did not prevent Petitioner from testifying, (3) found attorney Brown never told Petitioner not to testify because his conviction would be reversed on appeal, (4) attorney Brown's advise did not dissuade Petitioner from testifying, (5) found Petitioner had a lot

---

[14] S.F. State Habeas Hearing, testimony of Marilee Brown, at pp. 30-58 [ECF no. 19-2, at pp. 80-108].

[15] S.F. State Habeas Hearing, testimony of Sammy McCrary, at pp. 59-75 [ECF no. 19-2, at pp. 109-25].

to lose by testifying at trial, (6) concluded attorney Brown's performance did not fall below an objective level of reasonableness, (7) concluded Petitioner was not prejudiced by attorney Brown's performance, in part because Petitioner's testimony would not have helped at the guilt-innocence phase of trial and would have hurt at the punishment phase of trial, and (9) concluded Petitioner perjured himself during his testimony at the state habeas hearing regarding a plea offer of seven years having been extended to him.[16]

On April 1, 2015, the Texas Court of Criminal Appeals denied Petitioner's second state habeas corpus application attacking his 2011 Comal County burglary conviction without a written order based upon the findings of the state trial court made following a hearing. *Ex parte Mario A. Valadez*, WR-78,418-02 (Tex. Crim. App. April 1, 2015).

## II. Proceedings in this Court

Petitioner filed this federal habeas corpus action on April 8, 2015 (ECF nos. 1 & 2), arguing in his pro se pleadings that his trial counsel rendered ineffective assistance by (1) failing to investigate applicable law and giving Petitioner bad legal advice regarding the admissibility of Petitioner's hearsay statements made to Detective Wahrmund, (2) failing to adequately cross-examine Tony, Jr. regarding the time of the burglary and Tony, Jr.'s inconsistent statements to police, (3) discouraging Petitioner from testifying at trial because Petitioner had nothing to lose, (4) failing to notify Petitioner of his right to file a petition for discretionary review, and (5) unsuccessfully attempting to admit the hearsay testimony of Detective Wahrmund, which would

---

[16] State Habeas Trial Court's Findings of Fact and Conclusions of Law, February 23, 2015 (ECF no. 19-2, at pp. 180-86).

have opened the door under the Texas Rules of Evidence to the admission of evidence at the guilt-innocence phase of trial of Petitioner's prior criminal offenses.

On September 1, 2015 (ECF no. 17), Respondent filed his Answer, arguing the state habeas trial court's factual findings foreclose Petitioner's ineffective assistance claims.

On September 30, 2015 (ECF no. 20), Petitioner filed a response to Respondent's Answer in which Petitioner re-urged his ineffective assistance claims, urged this Court to disregard the state habeas court's factual findings, and also argued the evidence against Petitioner (particularly the trial testimony of Tony, Jr.) was not credible and therefore insufficient to support the jury's guilty verdict.

### III. <u>Standard of Review</u>

Because Petitioner filed his federal habeas corpus action after the effective date of the AEDPA, this Court's review of Petitioner's claims for federal habeas corpus relief is governed by the AEDPA. *Penry v. Johnson*, 532 U.S. 782, 792, 121 S. Ct. 1910, 1918, 150 L. Ed. 2d 9 (2001). Under the AEDPA standard of review, this Court cannot grant Petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. § 2254(d).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of Title 28 U.S.C. § 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the "contrary to" clause, a federal habeas court may grant relief if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Brown v. Payton*, 544 U.S. at 141; *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) ("A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"). A state court's failure to cite governing Supreme Court authority does not, *per se*, establish the state court's decision is "contrary to" clearly established federal law: "the state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell v. Esparza*, 540 U.S. at 16.

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Brown v. Payton*, 544 U.S. at 141; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) ("A federal habeas court can only set aside a state-court decision as 'an unreasonable application of...clearly established Federal law,' § 2254(d)(1), if the state court's application of that law is 'objectively unreasonable.'"); *Wiggins v. Smith*, 539 U.S. at 520-21. The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable; an "unreasonable" application is different from a merely "incorrect" one. *Schriro v. Landrigan*, 550

11

U.S. 465, 473 (2007) ("The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."); *Wiggins v. Smith*, 539 U.S. at 520; *Price v. Vincent*, 538 U.S. 634, 641 (2003) ("it is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner").

As the Supreme Court has explained:

Under the Antiterrorism and Effective Death Penalty Act, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."

*Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (*quoting Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state-court decision establish those principles. *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

The AEDPA also significantly restricts the scope of federal habeas review of state court fact findings. Title 28 U.S.C. § 2254(d)(2) provides federal habeas relief may not be granted on any claim that was adjudicated on the merits in the state courts unless the state court's adjudication of the claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."); *Williams v. Taylor*, 529 U.S. at 410

("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law."). Even if reasonable minds reviewing the record might disagree about the factual finding in question (or the implicit credibility determination underlying the factual finding), on habeas review, this does not suffice to supersede the trial court's factual determination. *Wood v. Allen*, 558 U.S. at 301; *Rice v. Collins*, 546 U.S. 333, 341-42 (2006).

In addition, § 2254(e)(1) provides a petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous. *Schriro v. Landrigan*, 550 U.S. at 473-74 ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); *Rice v. Collins*, 546 U.S. 333, 338-39 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"); *Miller-El v. Dretke,* 545 U.S. 231, 240 (2005) ("[W]e presume the Texas court's factual findings to be sound unless Miller-El rebuts the 'presumption of correctness by clear and convincing evidence.'"); 28 U.S.C. §2254(e)(1). It remains unclear at this juncture whether § 2254(e)(1) applies in every case presenting a challenge to a state court's factual findings under § 2254(d)(2). *See Wood v. Allen*, 558 U.S. at 300, 130 S. Ct. at 849 (choosing not to resolve the issue of § 2254(e)(1)'s possible application to all challenges to a state court's factual findings); *Rice v. Collins*, 546 U.S. at 339 (likewise refusing to resolve the Circuit split regarding the application of § 2254(e)(1)). However, the deference to which state-court factual findings are entitled under the AEDPA does not imply an abandonment or abdication of federal judicial review. *See Miller-El v. Dretke*, 545 U.S. at 240 (the standard is "demanding but not insatiable"); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Even in the context of federal habeas, deference does not

imply abandonment or abdication of judicial review.  Deference does not by definition preclude relief.").  Finally, in this Circuit, a federal habeas court reviewing a state court's rejection on the merits of a claim for relief pursuant to the AEDPA must focus exclusively on the propriety of the ultimate decision reached by the state court and not evaluate the quality, or lack thereof, of the state court's written opinion supporting its decision.  *See Maldonado v. Thaler*, 625 F.3d 229, 239 (5th Cir. 2010) (federal habeas review of a state court's adjudication involves review only of a state court's decision, not the written opinion explaining the decision), *cert. denied*, 132 S. Ct. 124 (2011); *St. Aubin v. Quarterman*, 470 F.3d 1096, 1100 (5th Cir. 2006) (holding Section 2254(d) permits a federal habeas court to review only a state court's decision and not the written opinion explaining that decision), *cert. denied*, 550 U.S. 921 (2007); *Amador v. Quarterman*, 458 F.3d 397, 410 (5th Cir. 2006) (holding the same), *cert. denied*, 550 U.S. 920 (2007); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) (holding the precise question before a federal habeas court in reviewing a state court's rejection on the merits of an ineffective assistance claim is whether the state court's ultimate conclusion was objectively reasonable), *cert. denied*, 541 U.S. 1045 (2004); *Anderson v. Johnson*, 338 F.3d 382, 390 (5th Cir. 2003) (holding a federal habeas court reviews only a state court's decision and not the opinion explaining that decision); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*) (holding a federal court is authorized by §2254(d) to review only a state court's decision and not the written opinion explaining that decision), *cert. denied*, 537 U.S. 1104 (2003).

## IV. Ineffective Assistance by Trial Counsel

A.    The Complaints

Petitioner's federal habeas corpus pleadings raise five separate assertions of deficient performance by his trial counsel.  Specifically, Petitioner argues his trial counsel rendered ineffective assistance by (1) failing to investigate applicable law and giving Petitioner bad legal advice regarding the admissibility of Petitioner's hearsay statements made to Detective Wahrmund, (2) failing to adequately cross-examine Tony, Jr. regarding the time of the burglary and Tony, Jr.'s inconsistent statements to police, (3) discouraging Petitioner from testifying at trial because Petitioner "had nothing to lose," (4) failing to notify Petitioner of his right to file a petition for discretionary review, and (5) unsuccessfully attempting to admit the hearsay testimony of Detective Wahrmund, which would have opened the door under the Texas Rules of Evidence to the admission of evidence at the guilt-innocence phase of trial of Petitioner's prior criminal offenses.

B.    The Constitutional Standard

The Sixth Amendment entitles criminal defendants to "the effective assistance of counsel," *i.e.*, legal representation that does not (1) fall below an objective standard of reasonableness in light of prevailing professional norms and the circumstances of the defendant's case (*Wong v. Belmontes*, 558 U.S. 15, 16-17 (2009);  *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009)); and (2) give rise to a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different (*Porter v. McCollum*, 558 U.S. 30, 38-40 (2009); *Wong v. Belmontes*, 558 U.S. at 19-20).  The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of trial counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984):

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

To satisfy the first prong of *Strickland*, i.e., establish that his counsel's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000).  In so doing, a convicted defendant must carry the burden of proof and overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance.  *Strickland v. Washington*, 466 U.S. at 687-91.  Courts are extremely deferential in scrutinizing the performance of counsel and make every effort to eliminate the distorting effects of hindsight.  *See Wiggins v. Smith*, 539 U.S. at 523 (holding the proper analysis under the first prong of *Strickland* is an objective review of the reasonableness of counsel's performance under prevailing professional norms which includes a context-dependent consideration of the challenged conduct as seen from the perspective of said counsel at the time).  "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Bobby v. Van Hook*, 558 U.S. at 7; *Strickland v. Washington*, 466 U.S. at 688-89.  It is strongly presumed  counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Strickland v. Washington*, 466 U.S. at 690.  To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable

probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *Wiggins v. Smith*, 539 U.S. at 534; *Strickland v. Washington*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Wiggins v. Smith*, 539 U.S. at 534; *Strickland v. Washington*, 466 U.S. at 694.

In evaluating petitioner's complaints about the performance of his counsel under the AEDPA, i.e., those complaints which the state courts have addressed on the merits, the issue before this Court is whether the Texas Court of Criminal Appeals could reasonably have concluded petitioner's complaints about his trial counsel's performance failed to satisfy either prong of the *Strickland* analysis. *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154 (2004). In making this determination, this Court must consider the underlying *Strickland* standard. *Id.* In those instances in which the state courts failed to adjudicate either prong of the *Strickland* test, such as those complaints the state courts summarily dismissed under the Texas writ-abuse statute or which petitioner failed to fairly present to the state courts, this Court's review of the un-adjudicated prong is *de novo*. *See Porter v. McCollum*, 558 U.S. at 39 (holding *de novo* review of the allegedly deficient performance of petitioner's trial counsel was necessary because the state courts had failed to address this prong of *Strickland* analysis); *Rompilla v. Beard*, 545 U.S. at 390 (holding *de novo* review of the prejudice prong of *Strickland* required where the state courts rested their rejection of an ineffective assistance claim on the deficient performance prong and never addressed the issue of prejudice); *Wiggins v. Smith*, 539 U.S. at 534 (holding the same).

A habeas petitioner has the burden to prove both prongs of the *Strickland* ineffective assistance standard by a preponderance of the evidence. *Rogers v. Quarterman*, 555 F.3d 483, 489

17

(5th Cir.), *cert. denied*, 558 U.S. 839 (2009); *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008), *cert. denied*, 556 U.S. 1240 (2009); *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000), *cert. denied*, 522 U.S. 1067 (2001).

Under the well-settled *Strickland* standard, the Supreme Court recognizes a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Bell v. Cone*, 535 U.S. 685. 698 (2002); *Strickland v. Washington*, 466 U.S. at 690; *Scheanette v. Quarterman*, 482 F.3d 815, 820 (5th Cir. 2007), *stay of execution denied*, 555 U.S. 1160 (2009); *Sonnier v. Quarterman*, 476 F.3d 349, 356 (5th Cir. 2007), *cert.* denied, 552 U.S. 948 (2007).

C.    <u>Failure to Investigate the Law/Giving Bad Legal Advice</u>

In his first two assertions of ineffective assistance, Petitioner argues his trial counsel failed to adequately investigate the law applicable to the admissibility of Detective Wahrmund's hearsay testimony (recounting Petitioner's hearsay statements that he sold drugs to Tony, Jr in exchange for the ring and watch) and erroneously advised Petitioner he would not have to testify because she could gain admission of the Petitioner's hearsay statements through the Detective.  In his final assertion of ineffective assistance, Petitioner complains his trial counsel's efforts to admit Detective Wahrmund's testimony regarding Petitioner's hearsay statements could have opened the door to admission of Petitioner's prior convictions at the guilt-innocence phase of trial.  The initial problems with these arguments are (1) attorney Brown testified she did not believe admitting Detective Wahrmund's hearsay testimony would help because Petitioner's hearsay statements amounted to an admission Petitioner had dealt drugs, (2) Petitioner nonetheless insisted she attempt to admit presenting the hearsay statements he made to Detective Wahrmund, (3) she believed the statements

18

Petitioner made to Detective Wahrmund were admissible as statements against penal interest based upon her review of the plain language of the Texas Rules of Evidence and her review of the annotations of those rules, (4) attorney Brown testified she did nothing to prevent Petitioner from testifying at trial beyond advising him he would face harmful impeachment through admission of his multiple prior burglary convictions, (5) the state habeas trial court found attorney Brown's testimony on these points was credible, and (6) the state habeas trial court found incredible Petitioner's testimony that his trial counsel refused to allow Petitioner to testify at trial.  The Texas Court of Criminal Appeals adopted the state habeas trial court's findings when it denied Petitioner's second state habeas corpus application on the merits.  Having independently reviewed the testimony during Petitioner's trial and state habeas corpus hearing, this Court concludes the state habeas court's findings of fact regarding the relative credibility of attorney Brown's testimony vis-a-vis that of Petitioner's testimony during the evidentiary hearing held in Petitioner's second state habeas corpus proceeding is fully supported by the record before the state habeas court.  *See Reed v. Stephens*, 739 F.3d 753, 785 (5th Cir.) ("As a federal habeas court, 'we must defer to the factual findings in the state court proceedings' and 'respect the ability of the fact-finder to evaluate the credibility of the witnesses.'" (*quoting Jackson v. Miss. Dep't of Corr.*, 359 Fed.Appx. 499, 502 (5th Cir.2010)), *cert. denied*, 135 S. Ct. 435 (2014).  Applying the deferential standard set forth in § 2254(e)(1), this Court concludes Petitioner has failed to establish by clear and convincing evidence there were any errors in the state habeas court's relevant factual findings.  Moreover, after reviewing all of the evidence from Petitioner's trial and state habeas corpus proceeding, this Court independently concludes this aspect of Petitioner's multi-faceted ineffective assistance claim fails to satisfy either prong of *Strickland* analysis.

Even assuming attorney Brown advised Petitioner prior to trial that she planned to present Petitioner's hearsay testimony through Detective Wahrmund, Petitioner has failed to identify anything objectively unreasonable with the conduct of attorney Brown on this matter *prior to or during trial*.  Attorney Brown offered the hearsay testimony of Detective Wahrmund at Petitioner's express request, obtained a ruling on the merits from the state trial court (albeit an unfavorable ruling) which preserved the point for state appellate review, and later re-urged the same legal arguments she had made in the trial court in the course of Petitioner's direct appeal.  The state appellate court ruled the trial court had not abused its discretion in excluding the hearsay testimony of Detective Wahrmund.  *Valadez v. State*, 2011 WL 5138641, *3-*5.  This Court is bound by the state appellate court's construction of Texas evidentiary rules.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Paredes v. Quarterman*, 574 F.3d 281, 291 (5th Cir. 2009) (a state court's interpretation of state law binds a federal court sitting in habeas corpus), *cert. denied*, 562 U.S. 1203 (2011); *Amador v. Quarterman*, 458 F.3d 397, 412 (5th Cir. 2006) (holding a federal habeas court must defer to a state court's interpretation of state law), *cert. denied*, 550 U.S. 920 (2007); *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004) ("In our role as a federal habeas court, we cannot review the correctness of the state habeas court's interpretation of state law.").

Petitioner does not identify any legal authority existing at the time of Petitioner's *trial* which *definitively* rendered Detective Wahrmund's hearsay testimony either admissible or inadmissible and which Petitioner's trial counsel could have discovered through additional legal research.  On the contrary, attorney Brown presented an arguable legal theory to support the admissibility of the

hearsay testimony in question and obtained a ruling on the merits from the trial court sufficient to preserve the matter for state appellate review.[17]   Nothing in the Sixth Amendment guarantees a criminal defendant that his trial counsel will accurately predict every evidentiary ruling made by the defendant's trial court or any subsequent rulings by a state appellate court.  "Clairvoyance is not a required attribute of effective representation." *United States v. Fields*, 565 F.3d 290, 295 (5th Cir.), *cert. denied*, 553 U.S. 914 (2009).  Significantly, Petitioner presents no rational argument suggesting the actions of Petitioner's trial counsel in seeking admission of the hearsay testimony in question, which Petitioner himself urged his trial counsel to attempt, was objectively unreasonable.[18]

---

[17] Ironically, in Petitioner's second petition for discretionary review, the same two attorneys who have appeared on behalf of Petitioner in his second state habeas corpus proceeding argued, as did Petitioner's trial counsel, the state trial court erred in excluding the hearsay testimony of Detective Wahrmund (ECF no. 18-17).  See note 11, supra.  This fact suggests there was at least some arguable legal basis for asserting this argument even after the date of Petitioner's trial.

[18] Petitioner argues in his memorandum in support of his federal habeas corpus petition herein that Petitioner's counsel argued in Petitioner's second PDR that admission of the Petitioner's hearsay statements to Detective Wahrmund could have opened the door to the admission of Petitioner's prior convictions during the guilt-innocence phase of trial.  However, Petitioner fails to explain why it was objectively unreasonable for his trial counsel to attempt to do exactly what Petitioner asked her to do at trial, i.e., obtain the admission of Petitioner's hearsay statement that he exchanged marijuana with Tony, Jr. for the ring and watch through the testimony of Detective Wahrmund.  From a practical perspective, the only ways to present this defense to Petitioner's jury at the guilt-innocence phase of trial were either through the direct testimony of Petitioner or through admission of Petitioner's hearsay statements made to Detective Wahrmund.  Either way, Petitioner's prior convictions would likely have also come into evidence to impeach Petitioner's version of the relevant events.  Petitioner has alleged no specific facts showing it was objectively unreasonable for his trial counsel to choose to present this defensive theory through Detective Wahrmund rather than through Petitioner himself.  On the contrary, attempting to present this defense through Detective Wahrmund instead of Petitioner himself had the tactical advantages of (1) avoided the spectacle of Petitioner taking the stand and committing perjury in front of the jury, something which the state habeas court found Petitioner did during the evidentiary hearing held in Petitioner's second state habeas corpus proceeding and (2) preventing the jury from witnessing firsthand the Petitioner's efforts to throw his own nephew under the bus - either of which could well have alienated the jury.  Given Petitioner's extensive criminal record (particularly his multiple prior burglary convictions) and Petitioner's documented gang membership, it would have been objectively unreasonable for his

Petitioner's first assertions of ineffective assistance fail to satisfy the initial prong of *Strickland* analysis.

Moreover, even if Petitioner's trial counsel failed to adequately research applicable Texas law and failed to find any authorities which rendered the hearsay testimony in question either definitively admissible or inadmissible, Petitioner still cannot satisfy the prejudice prong of *Strickland*. Petitioner's trial counsel sought to admit the hearsay statements by Petitioner through Detective Wahrmund and obtained a ruling on the merits from the state appellate courts which declared the state trial court had not abused its discretion in excluding the statements in question. Petitioner was not harmed by his trial counsel's efforts to obtain admission of the hearsay testimony in question. The state appellate courts ruled the testimony was properly excluded as a matter of state law. Insofar as Petitioner argues he would have taken the stand and testified during the guilt-innocence phase of trial had he known Detective Wahrmund would not be allowed to testify about Petitioner's hearsay statements, that argument is pure sophistry. Petitioner was present and fully aware of the fact the state trial court ruled adversely to Petitioner's trial counsel on this very point.[19] As of that moment, which occurred *before* the defense rested at the guilt-innocence phase of trial, Petitioner knew full well Detective Wahrmund's hearsay testimony would not be admitted and still

---

trial counsel to put Petitioner on the stand at the guilt-innocence phase of trial as such a maneuver would have subjected Petitioner to potentially devastating cross-examination.

Because Petitioner's trial counsel was unsuccessful in her efforts to get Petitioner's hearsay statements into evidence through Detective Wahrmund, Petitioner was not prejudiced within the meaning of *Strickland* by that effort. Regardless of whether Petitioner's prior convictions might have become admissible at the guilt-innocence phase of trial under state evidentiary rules as a result of the admission of Detective Wahrmund's challenged hearsay testimony, the hearsay testimony in question was not admitted into evidence at the guilt-innocence phase of trial. Evidence of Petitioner's prior convictions was not admitted until the punishment phase of Petitioner's trial.

[19] S.F. Trial, Volume 3 of 5, at pp. 138-39 (ECF no. 18-10).

had the opportunity to choose to testify at trial.  The state habeas court rejected as incredible

Petitioner's testimony that his trial counsel prevented Petitioner from testifying at trial.[20]  The

evidentiary record from Petitioner's state habeas corpus proceeding fully supports that factual

determination. Having independently reviewed the record from Petitioner's trial and second state

habeas corpus proceeding, this Court concludes there is no reasonable probability that, but for the

failure of Petitioner to testify at trial, the outcome of either phase of Petitioner's trial would have

been any different.  Had he testified at either phase of his trial, Petitioner would have been subject

to potentially devastating cross-examination consisting of his multiple prior burglary convictions,

recorded telephone conversations in which Petitioner admitted to his cousin that he committed the

burglary in question, and documentary evidence of Petitioner's gang membership and possession of

a copy of the Mexican Mafia's constitution.[21]  Petitioner's first two and final assertions of ineffective

assistance all fail to satisfy the prejudice prong of *Strickland* analysis.

D.     Failure to Adequately Cross-Examine Tony, Jr.

In his second assertion of ineffective assistance, Petitioner argues his trial counsel should

have more thoroughly cross-examined Tony, Jr. regarding the time of the burglary and Tony, Jr.'s

inconsistent statements to police.   The fundamental problems with these arguments are (1)

---

[20] Second State Habeas Transcript, i.e., WR-78,418-02 (ECF no. 19-2), at p. 181.  More specifically, the state habeas trial court found (1) attorney Brown discussed Petitioner's right to testify prior to trial and (2) knowing he had a right to testify, Petitioner never asked attorney Brown to testify nor did she deny Petitioner the right to testify.  *Id.*  The Texas Court of Criminal Appeals adopted those findings when it denied state habeas corpus relief on the merits.  *Ex parte Mario A. Valadez*, WR-78,418-02 (Tex. Crim. App. April 1, 2015).

[21] The Fifth Circuit has chronicled the origins, organization, and operations of the Mexican Mafia in the first two decades after its founding.  *United States v. Valles*, 484 F.3d 745, 747-50 (5th Cir.), *cert. denied sub nom. Garcia-Esparza v. U.S.*, 551 U.S. 1155 (2007).

Petitioner's trial counsel did, in fact. cross-examine Tony, Jr., on precisely those points, along with pointing out several other inconsistences in the same witness's statements to police,[22] and (2) Petitioner does not allege any specific facts suggesting either (a) what additional questions his trial counsel should have directed to Tony, Jr. or (b) what potentially helpful testimony would have been elicited through such additional questions.  Absent some fact-specific allegation regarding what additional questions should have been asked during trial counsel's cross-examination of a prosecution witness and an explanation of what beneficial information would have been obtained through such additional cross-examination, a complaint about trial counsel's cross-examination fails to satisfy either prong of the *Strickland* test.  *See United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014) ("Because decisions regarding cross-examination are strategic, they usually 'will not support an ineffective assistance claim.'"), *cert. denied*, 136 S. Ct. 892 (2016).  This Court has reviewed the vigorous, extensive, cross-examination of Petitioner's nephew by Petitioner's trial counsel and independently concludes this aspect of Petitioner's multi-faceted ineffective assistance claim satisfies neither prong of *Strickland* analysis.  *See Woodfox v. Cain*, 609 F.3d 774, 812 (5th Cir. 2010) (holding trial counsel was not ineffective for failing to impeach prosecution's witness's eyewitness testimony through medical records or expert testimony regarding eyewitness's poor vision where the eyewitness admitted on cross-examination he suffered from vision problems and had been completely blind in one eye for several years before incident in question).

---

[22] S.F. Trial, Volume 3 of 5, testimony of Tony Valadez, Jr., at pp. 28-47.  In fact, during his cross-examination, Tony, Jr. admitted he initially told police the burglary happened around two in the afternoon but he had testified during direct examination that it had taken place between nine and ten in the morning. *Id.*, at pp. 29-30.  Petitioner's trial counsel also elicited favorable testimony from Tony , Jr. on cross-examination that (1) his parents routinely locked all their doors, (2) there were no signs of forced entry following the burglary, and (3) he personally closed doors and drawers in an effort to coverup the fact there had been a burglary.  *Id.*, at pp. 32-34, 38.

E.     Preventing Petitioner from Testifying

Petitioner argues his trial counsel rendered ineffective assistance by discouraging Petitioner from testifying at trial because Petitioner "had nothing to lose." As explained above, the state habeas trial court found as a matter of fact that Petitioner's trial counsel did not prevent Petitioner from testifying at trial.[23] The Texas Court of Criminal Appeals adopted that factual finding. This Court independently concludes the evidentiary record before the state habeas court fully supports that factual determination. Thus, the premise underlying this assertion of ineffective assistance is specious. Furthermore, for the reasons discussed above,[24] this Court independently concludes Petitioner' was not prejudiced within the meaning of *Strickland* by any act or omission by his trial counsel which discouraged Petitioner from testifying at trial. Had Petitioner testified at trial in the same manner he testified during his state habeas corpus proceeding, there is not even a remote possibility, much less a reasonable probability, the outcome of either phase of Petitioner's trial would have been any different. This assertion of ineffective assistance satisfies neither prong of *Strickland* analysis.

F.     Failure to Notify Petitioner of his Right to File a PDR

Petitioner argues his trial and state appellate counsel rendered ineffective assistance by failing to notify Petitioner of his right to file a petition for discretionary review. This complaint fails to satisfy the prejudice prong of *Strickland* analysis because, even assuming there was deficient performance by Petitioner's trial or state appellate counsel in connection with Petitioner's initial petition for discretionary review ("PDR"), the Texas Court of Criminal Appeals subsequently

---

[23] *See* note 20, *supra.*

[24] *See* note 18, *supra.*

granted Petitioner leave to file an out-of-time petition for discretionary review.  *Ex parte Valadez*, AP-76,989, 2013 WL 1182729 (Tex. Crim. App. Mar. 20, 2013).  With the assistance of counsel, Petitioner then filed a second petition for discretionary review which the Texas Court of Criminal Appeals refused on June 12, 2013 (PD-598-13).  Thus, Petitioner has alleged no facts showing a reasonable probability that, but for any deficiency in the performance of his state trial or state appellate counsel in connection with Petitioner's initial PDR, the outcome of Petitioner's direct appeal would have been any different.  Petitioner received an opportunity to seek discretionary review from the Texas Court of Criminal Appeals and did so.  That state court appellate refused Petitioner's PDR.

G.    Conclusions

All of Petitioner's assertions of ineffective assistance fail to satisfy the prejudice prong of *Strickland* analysis.  Petitioner's first, second, third, and fifth assertions of ineffective assistance do not satisfy the deficient performance prong of *Strickland*.  Under such circumstances, the Texas Court of Criminal Appeals' rejection on the merits of Petitioner's multi-faceted ineffective assistance claim in the course of Petitioner's second state habeas corpus proceeding was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's trial and second state habeas corpus proceedings.  Petitioner is not entitled to federal habeas corpus relief based upon any of the assertions of ineffective assistance contained in his pleadings in this cause.

## V. <u>Insufficient Evidence Claim</u>

In his response to Respondent's answer, Petitioner argues for the first time there was insufficient evidence to support his conviction because, in view of its internal inconsistencies and prior inconsistent statements by the same witness, the trial testimony of his nephew was not credible.

Petitioner has never presented this argument to any state court and, therefore, has procedurally defaulted on this unexhausted claim. The Fifth Circuit has consistently held that federal habeas review on unexhausted claims presented by a convicted Texas criminal defendant is barred under the procedural default doctrine. *See, e.g., Beatty v. Stephens*, 759 F.3d 455, 465 (5th Cir. 2014) (federal habeas corpus petition procedurally defaulted on ineffective assistance claim by failing to present the claim to the Texas Court of Criminal Appeals); *Reed v. Stephens*, 739 F.3d 753,780 (5th Cir.) (unexhausted federal habeas corpus claim procedurally defaulted)*, cert. denied*, 135 S. Ct. 435 (2014); *Trottie v. Stephens*, 720 F.3d 231, 248 (5th Cir. 2013) (petitioner procedurally defaulted on ineffective assistance claim by asserting a new factual basis to support the claim which rendered same unexhausted), *cert. denied*, 134 S. Ct. 1540 (2014). Petitioner procedurally defaulted his unexhausted insufficient evidence claim.

Moreover, the argument lacks any arguable merit because it misconstrues the nature of evidentiary sufficiency review in federal habeas cases. For more than a generation, the United States Supreme Court has consistently applied a single standard for evaluating the sufficiency of the evidence to support a state criminal jury verdict. "In *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), we held that a state prisoner is entitled to habeas corpus relief if a federal judge finds that 'upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *McDaniel v. Brown*, 558 U.S. 120, 121

(2010) (*citation omitted*). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir.), *cert. denied*, 555 U.S. 995 (2008).  To determine whether the evidence is sufficient to support a state criminal conviction, we must look to state law for the substantive elements of the relevant criminal offense.  *Jackson v. Virginia*, 443 U.S. at 324 n.16.  Texas law defines the offense of burglary of a habitation as requiring a showing the defendant entered a habitation without the effective consent of the owner with intent to commit a felony or theft.  *Barnes v. Johnson*, 160 F.3d 218, 223 (5th Cir. 1998), *cert. denied*, 526 U.S. 1118 (1999).

The standard of federal habeas review for insufficient evidence claims under the AEDPA is highly deferential. *See McDaniel v. Brown*. 558 U.S. at 133, 130 S. Ct. at 673 ("a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'").  Thus, this Court's review of the sufficiency of the evidence supporting Petitioner's conviction necessarily required that all testimony given during Petitioner's trial be viewed in the light most favorable to the jury's verdict.  *Id.*  In so doing, this Court may not second-guess the jury's implicit credibility determinations:

> The standard of review for determining whether there was sufficient evidence to convict a defendant is whether the evidence, when reviewed in the light most favorable to the government with all reasonable inferences and credibility choices made in support of a conviction, allows a rational fact finder to find every element of the offense beyond a reasonable doubt.  The evidence is viewed in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the trier of fact which tend to support the verdict.

*United States v. Cannon*, 750 F.3d 492, 506 (5th Cir.) (*quoting United States v. Asibor*, 109 F.3d 1023, 1030 (5th Cir.), *cert. denied*, 522 U.S. 902 (1997)), *cert. denied*, 135 S. Ct. 709 (2014).

Petitioner's nephew testified at the guilt innocence phase of trial that (1) he awoke to find Petitioner rummaging through his parents' jewelry, (2) he never authorized Petitioner to enter his parents' house, (3) Petitioner begged his nephew not to call the police and explained he was a drug addict who was looking for items he could sell to feed his habit, and (4) he allowed Petitioner to exit his parents' home only after Petitioner assured him he had not taken anything. It was undisputed Petitioner pawned a watch and ring belonging to Petitioner's brother only hours after leaving his brother's home. Petitioner's brother and sister-in-law both testified they never authorized Petitioner to enter their home or to take any of the items Petitioner pawned. Viewed in the light most favorable to the jury's verdict, the foregoing evidence is more than sufficient to establish Petitioner was guilty of the offense of burglary of a habitation under Texas law. Petitioner's unexhausted, procedurally defaulted, insufficient evidence claim does not warrant federal habeas corpus relief.

## VI. Certificate of Appealability

The AEDPA converted the "certificate of probable cause" previously required as a prerequisite to an appeal from the denial of a petition for federal habeas corpus relief into a "Certificate of Appealability" ("CoA"). *See Hill v. Johnson*, 114 F.3d 78, 80 (5th Cir. 1997) (recognizing the "substantial showing" requirement for a CoA under the AEDPA is merely a change in nomenclature from the CPC standard); *Muniz v. Johnson*, 114 F.3d 43, 45 (5th Cir. 1997) (holding the standard for obtaining a CoA is the same as for a CPC). The CoA requirement supersedes the previous requirement for a certificate of probable cause to appeal for federal habeas corpus petitions filed after the effective date of the AEDPA. *Robison v. Johnson*, 151 F.3d 256, 259 n.2 (5th Cir.

1998), *cert. denied*, 526 U.S. 1100 (1999); *Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997), *cert. denied sub nom. Monroe v. Johnson*, 523 U.S. 1041 (1998).

Under the AEDPA, before a petitioner may appeal the denial of a habeas corpus petition filed under Section 2254, the petitioner must obtain a CoA. *Miller-El v. Johnson*, 537 U.S. 322, 335-36 (2003); 28 U.S.C. §2253(c)(2). Likewise, under the AEDPA, appellate review of a habeas petition is limited to the issues on which a CoA is granted. *See Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002) (holding a CoA is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *Jones v. Cain*, 227 F.3d 228, 230 n.2 (5th Cir. 2000) (holding the same); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding the scope of appellate review of denial of a habeas petition limited to the issues on which CoA has been granted). In other words, a CoA is granted or denied on an issue-by-issue basis, thereby limiting appellate review to those issues on which CoA is granted alone. *Crutcher v. Cockrell*, 301 F.3d at 658 n.10; *Lackey v. Johnson*, 116 F.3d at 151; *Hill v. Johnson*, 114 F.3d at 80; *Muniz v. Johnson*, 114 F.3d at 45; *Murphy v. Johnson*, 110 F.3d 10, 11 n.1 (5th Cir. 1997); 28 U.S.C. §2253(c)(3). A CoA will not be granted unless the petitioner makes a substantial showing of the denial of a constitutional right. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Miller-El v. Johnson*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983).

To make such a showing, the petitioner need not show he will prevail on the merits but, rather, must demonstrate that reasonable jurists could debate whether (or, for that matter, agree) the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Tennard v. Dretke*, 542 U.S. at 282; *Miller-El v. Johnson*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. at 484; *Barefoot v. Estelle*, 463 U.S. at 893

n.4.  This Court is required to issue or deny a CoA when it enters a final Order such as this one adverse to a federal habeas petitioner. *Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts*.

The showing necessary to obtain a CoA on a particular claim is dependent upon the manner in which the District Court disposed of the claim.  "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Johnson*, 537 U.S. at 338 (*quoting Slack v. McDaniel*, 529 U.S. at 484); *accord Tennard v. Dretke*, 542 U.S. at 282.  In a case in which the petitioner wishes to challenge on appeal this Court's dismissal of a claim for a reason not of constitutional dimension, such as procedural default, limitations, or lack of exhaustion, the petitioner must show jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and whether this Court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. at 484 (holding when a district court denies a habeas claim on procedural grounds, without reaching the underlying constitutional claim, a CoA may issue only when the petitioner shows that reasonable jurists would find it debatable whether (1) the claim is a valid assertion of the denial of a constitutional right and (2) the district court's procedural ruling was correct).

Reasonable minds could not disagree over this Court's conclusions that (1) all of Petitioner's assertions of ineffective assistance fail to satisfy the prejudice prong of *Strickland* analysis, (2) Petitioner's first, second, third, and final assertions of ineffective assistance fail to satisfy the initial prong of *Strickland* analysis, (3) Petitioner procedurally defaulted on his unexhausted insufficient

evidence claim, (4) Petitioner's insufficient evidence lacks any arguable merit, and (5) the Texas

Court of Criminal Appeals acted in a manner wholly consistent with applicable federal law when it

denied Petitioner's second state habeas corpus application on the merits.  Petitioner is not entitled

to a Certificate of Appealability on any of his claims herein.

Accordingly, it is hereby **ORDERED** that:

1.   Petitioner's original federal habeas corpus petition, filed April 8, 2015 (ECF no. l.), as

supplemented by Petitioner's response to Respondent's answer, filed September 30, 2015 (ECF

no. 20), is in all respects **DENIED**.

2.  Petitioner is **DENIED** a Certificate of Appealability on all his claims in this Section 2254

action.

**SIGNED** on April 1, 2016.


ROBERT PITMAN
UNITED STATES DISTRICT JUDGE